UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CARRIE LEWIS, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:13-CV-262<br>Collier/Carter |

REPORT AND RECOMMENDATION

     This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 15).

     For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

     Plaintiff was 29 years old at the time of the ALJ decision (Tr. 22, 114). She has an eighth grade education and past relevant work experience as a deli clerk, cafeteria attendant, and fast food worker (Tr. 39, 48).

## Applications for Benefits

Plaintiff filed an application for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on August 21, 2009, alleging disability beginning the same day (Tr. 56-57, 114). The agency denied her applications initially, upon reconsideration, and in the March 14, 2012 decision of the Administrative Law Judge ("ALJ") (Tr. 9-22, 63-66, 71-74). Plaintiff requested review of the ALJ's decision with the Appeals Council which was denied on June 12, 2013 (Tr. 1-4, 7). Plaintiff has exhausted her administrative remedies and has timely filed a civil action in this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Sec'y of Health & Human Servs., 902 F.2d 447, 449-50 (6th

Cir. 1990). However, once the claimant makes a *prima facie* case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Sec'y, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Sec'y, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Sec'y, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since August 21, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: cervical and lumbar radiculopathy and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

3

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday; sit without restriction; can remember and understand multi-step directions, can maintain concentration, persistence and pace, can interact with others in a structured, non-intensive environment and can adapt to infrequent change.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 1, 1983 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a) 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 21, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-21).

Statement of Issues Raised

I. Whether the Administrative Law Judge ("ALJ") Properly Considered the Consultative Psychologist's Opinion.

II. Whether the ALJ failed to Weigh the 2006 Functional Assessment from Plaintiff's Physical Therapist.

III. Whether the ALJ Properly Weighed the Opinions of the State Agency Medical Consultants.

IV. Whether the ALJ's Residual Functional Capacity Included all of Plaintiff's Credible Mental Limitations.

V. Whether the Signature on the Decision from a Different ALJ Warrants Remand.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 18-20) and in Plaintiff's memorandum (Doc. 12-1, pp. 3-9). Rather than repeating those facts here I will make specific references to relevant portions in the analysis section which follows.

Analysis

The Consultative Psychologists Opinion:

Plaintiff first argues the ALJ failed to properly consider the opinion of the consultative psychological examiner and did not resolve significant inconsistencies between this opinion and the findings in the decision.

Dr. Thelma Foley, a one-time examining consultative psychologist, opined in September 2008 that Plaintiff would be able to understand and remember instructions, her concentration and

5

persistence were adequate, she would be aware of normal hazards, and she would be able to travel independently. Dr. Foley noted Plaintiff related to her adequately during the exam, but she would probably have difficulty getting along with people in a job setting (Tr. 284). The ALJ discussed Dr. Foley's opinion and specifically noted the social interaction limitation (Tr. 18-20). The ALJ gave Dr. Foley's opinion weight "insofar as [it is] consistent with the above-stated residual functional capacity" (Tr. 20).

The weight afforded a physician's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. §§ 404.1527(d), 404.1545, 404.1546(c), 416.927(d), 416.945, 4016.946(c); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *4-5 (1996).

Plaintiff argues that the ALJ did not appropriately address Dr. Foley's opinion that Plaintiff would have difficulty getting along with people in a job setting (Doc. 12-1, Plaintiff's Brief at 12). I disagree. An RFC assessment must consider and address medical source opinions. See Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (1996). If the RFC assessment conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted. See id. The ALJ in this case considered Dr. Foley's opinion, including the social interaction limitation, and gave it some weight (Tr. 20). As the Commissioner argues, the ALJ

6

accommodated Dr. Foley's opined social interaction limitation by limiting Plaintiff to interaction with others in a structured, non-intensive environment (Tr. 16, Finding No. 5). I conclude the ALJ complied with SSR 96-8p. Moderate difficulty in social functioning can be accommodated with this RFC limitation. This is supported by the opinions of the non-examining state agency psychologists. State agency psychologist C. Warren Thompson, Ph.D. reviewed the record evidence in February 2010, and, like Dr. Foley, noted moderate difficulties in social interaction (Tr. 325). Dr. Thompson specifically noted that Plaintiff would have moderate difficulties interacting appropriately with the general public, accepting instructions and criticism from supervisors, and getting along with coworkers or peers (Tr. 325). Because of these difficulties, Dr. Thompson opined in the functional capacity assessment portion of his report that Plaintiff would need to be limited to interactions with others in a structured, non-intensive environment (Tr. 326). Dr. Andrew Phay, another state agency psychologist, also reviewed the record evidence and affirmed Dr. Thompson's opined RFC (Tr. 440). The ALJ gave Dr. Thompson's and Dr. Phay's opinions significant weight (Tr. 19). State agency physicians are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-6p, 1996 WL 374180, at *2 (1996).

In addition, Dr. Foley's opinion is dated nearly a year before the date Plaintiff alleges that she became disabled (Tr. 114, 282). This is significant because the opinion does not reflect Plaintiff's mental functioning at the time of her alleged disability and would not have been entitled to any significant weight. Nonetheless, the ALJ considered the opinion and incorporated

7

it into her RFC finding by limiting Plaintiff to interactions with others in a structured, non-intensive work environment (Tr. 16-20).

Plaintiff points to the following statements by the ALJ to argue that the ALJ actually rejected Dr. Foley's opinion but does not explain why: "The opinions of the consultative examining professionals are generally consistent with the substantial evidence of record. However, they do not adequately consider the claimant's subjective complaints of long-standing mental health problems, which could reasonably be expected to produce a more limited range of functioning" (Tr. 20; Pl.'s Br. at 12). The Commissioner conceded in their brief that this language was unclear, but suggested that this statement refers to the opinion of consultative psychologist Lisa Patterson and M.A. Leah Hawkins, which the ALJ had discussed immediately prior to making the statement at issue (Tr. 19-20). In November 2009, Dr. Patterson and Ms. Hawkins opined that Plaintiff did not have any mental limitations (Tr. 308). The ALJ clearly disagreed that Plaintiff did not have mental limitations because she included mental limitations in the RFC assessment (Tr. 16, Finding No. 5). However, I agree with the Commissioner that the lack of clarity regarding Dr. Foley's opinion is harmless error because the ALJ's RFC assessment is consistent with Dr. Foley's opinion. Therefore, Plaintiff does not show that she has been prejudiced by the above statements.

<u>The 2006 Functional Assessment from Plaintiff's Physical Therapist</u>

Next, Plaintiff argues the ALJ failed to evaluate the functional assessment in Plaintiff's physical therapy records. In December 2006, approximately 2 years and 9 months before the date Plaintiff alleged she became disabled, her physical therapist noted that she was unable to stand for more than 30 minutes, sit for more than 30 minutes, and lift more than 10 pounds (Tr.

8

114, 258). The ALJ considered the fact that Plaintiff had previously received physical therapy, but did not specifically discuss the 2006 assessment (Tr. 18). The Commissioner contends that the ALJ was not required to discuss this assessment because it did not reflect Plaintiff's functioning during the relevant time period, which was the time period following August 21, 2009, the alleged onset date (Tr. 114).

Assuming, arguendo, that the physical therapist's assessment was time relevant, the Commissioner further argues the ALJ was not required to weigh it because it is not a medical opinion from an acceptable medical source. See SSR 06-03p, 2006 WL 2329939, at *1 (2006)(only "acceptable medical sources" can provide medical opinions). A physical therapist is an "other source." See id. SSR 06-3p states that an "(ALJ) generally should explain the weight given to opinions from 'other sources', or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . .." See id. at *6. (emphasis added). The ALJ did not specifically discuss the 2006 assessment, but she did note that Plaintiff underwent physical therapy, and it is clear from her decision that she did not give the 2006 assessment any weight. As the Commissioner notes, the limitations the physical therapist assessed were so severe, the assessment was essentially one of disability. I conclude that by finding that Plaintiff was not disabled and could perform a limited range of light work, the ALJ clearly rejected the physical therapist's assessment (Tr. 16, 21, Finding Nos. 5, 11).

The ALJ considered Plaintiff's condition as a whole in assessing her RFC. She specifically considered treatment notes from 2008 regarding Plaintiff's back and neck impairment, even though they were dated before the alleged onset date, along with the evidence

9

dated after the alleged onset date (Tr. 18). Therefore, she considered the evidence regarding Plaintiff's back and neck impairment, and that evidence showed that Plaintiff's neck and back impairment did not cause functional limitations as severe as those the physical therapist opined. The only lumbar and cervical MRIs in the record are from 2008, before the alleged onset date, and the ALJ noted that those MRIs revealed reversed lordotic curve but no disc abnormalities in the cervical spine and an annular tear and minimal disc bulge but no stenosis or nerve root impingement in the lumbar spine (Tr. 18). As the ALJ noted, Plaintiff's physicians were unable to identify the source of Plaintiff's pain in September 2008 and therefore noted that surgery was not an option (Tr. 18, 225). These objective findings undermine the physical therapist's assessment and support the ALJ's decision to reject it implicitly.

After the alleged onset date, Plaintiff continued to complain of neck and low back pain, but objective testing revealed that Plaintiff was not nearly as functionally limited as the physical therapist opined in 2006. As the ALJ noted, in February 2010, Plaintiff exhibited normal mobility, normal gait and station, no difficulty getting out of a chair, and no difficulty getting on and off the exam table (Tr. 18, 332-33). The ALJ also noted that Plaintiff exhibited no spinal tenderness or spasms and her strength was normal in all of her extremities (Tr. 18, 333). She also had full range of motion everywhere except in her cervical and lumbar spines, where her range of motion was mildly limited. (Tr. 333, 335). However, straight leg raise testing was negative, her reflexes were normal, and she had no focal motor or sensory deficits. The findings were lumbosacral pain of questionable etiology (Tr. 336).

Plaintiff's daily activities also undermine the physical therapist's assessment. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Blacha v. Sec'y of Health and Human Servs., 927

10

F.2d 228, 231 (6th Cir. 1990). As the ALJ noted, Plaintiff gets her children ready for school, takes them to school, cleans, takes care of her 4 year old child, cooks for her children and sometimes others, picks children up from school and helps them with their homework, manages her self-care tasks, takes out the garbage, washes dishes, does laundry, and sweeps (Tr. 18, 305). She also goes grocery shopping once or twice per week and sometimes goes to the lake with her friend (Tr. 147, 306). I note that at the February 14, 2012 hearing she denied the ability to do any house work or cooking even though she was working 15 to 30 hours a week in a deli, cutting meat, taking care of customers and making sandwiches (Tr 37-39). In August 2010, one year after she reported onset of disability, Plaintiff was jumping on a trampoline with her husband (Tr. 453). She performed similar activities of daily living before the alleged onset date (Tr. 283-84). I agree with the Commissioner, that these daily activities, which have been fairly consistent since 2008, belie the disabling limitations the physical therapist assessed in 2006. These activities more accurately reflect Plaintiff's functioning during the relevant time period than the physical therapist's assessment and provide further evidence in support of the ALJ's decision.

<u>The Opinions of the State Agency Medical Consultants</u>

Plaintiff contends the ALJ's decision is less restrictive than any of the medical opinions of record and in so doing refers to the opinions of state agency medical consultants. He essentially argues that the ALJ improperly rejected the opinions of the state agency medical consultants, Drs. Reeta Misra and Carolyn Parrish (Doc 12-1, Plaintiff's Brief at 16). Drs. Misra and Parrish reviewed the record evidence in April and August 2010, respectively, and opined Plaintiff could perform light work with no climbing of ladders, ropes, or scaffolds, and occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling

(Tr. 342-43). The ALJ gave these opinions weight to the extent that they were consistent with her RFC finding (Tr. 19).

As noted above, the weight afforded a physician's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. §§ 404.1527(d), 404.1545, 404.1546(c), 416.927(d), 416.945, 4016.946(c); SSR 96-5p, 1996 WL 374183, at *4-5. State agency physicians are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-6p, 1996 WL 374180, at *2.

Here, the ALJ found that the record evidence did not support the postural limitations Drs. Misra and Parrish opined, and therefore gave that portion of their opinions little weight (Tr. 19). He noted the evidence of record did not support the postural limitations such as those opined and noted Plaintiff's reports of being able to care for children, clean her house, do laundry and other activities. I conclude that there is substantial evidence from which the ALJ could reach this conclusion. As already discussed, in February 2010, Plaintiff exhibited some limitation in her spinal range of motion, but her physical exam was otherwise completely normal (Tr. 332-35). The only evidence dated after the alleged onset date that Plaintiff cites in her argument is the opinion of consultative physician Dr. Marc Bennett (Doc 12-1, Plaintiff's Brief at 17). Dr.

12

Bennett opined, based on the above objective findings and Plaintiff's subjective complaints of back and neck pain, that she could "stand and/or walk (with normal breaks) for a total of <u>at least</u> 2-hours in an 8-hour workday" (Tr. 337)(emphasis added). Although Plaintiff argues otherwise, Dr. Bennett did not limit Plaintiff to only 2 hours of standing and/or walking, Dr. Bennett opined Plaintiff could stand and/or walk a <u>minimum</u> of 2 hours (Tr. 337). As the ALJ noted, the record contains no evidence after the alleged onset date that supports the postural limitations Drs. Misra and Parrish opined (Tr. 19).

The only other evidence Plaintiff cited was a 2008 work notice from Dr. Doug Mathews, a prior treating physician (Tr. 279; Doc. 12-1, Plaintiff's Brief at 17). This opinion does not reflect Plaintiff's functioning during the relevant time period, which is after the alleged onset date of August 21, 2009 (Tr. 114). Further, the objective evidence from Plaintiff's physical exam in 2010, which shows only mild limitation in range of motion, undermines the postural limitations Dr. Mathews noted (Tr. 332-35).

Plaintiff argues, "[T]here are no medical opinions in the record which contradict these assessed postural limitations" and that the ALJ substituted her opinion for the opinions of the physicians (Doc 12-1, Plaintiff's Brief at 17-18). However, the ALJ is responsible for evaluating the case record, reconciling conflicting medical opinions and evidence, and weighing the plaintiff's credibility. <u>See</u> <u>Buxton v. Halter</u>, 246 F.3d at 775. Further, the ALJ must explain the weight he gave a medical opinion, which the ALJ did in this case (Tr. 19). Plaintiff has the burden of proving disability. <u>See</u> 20 C.F.R. §§ 404.1512, 416.912; <u>Foster</u>, 279 F.3d at 353. The opinions of Drs. Misra and Parrish regarding postural limitations were not accepted by the ALJ.

13

However there was other evidence to support the ALJ's conclusion and on the whole I think there was substantial evidence to support the ALJ's RFC finding.

The Residual Functional Capacity Finding and Plaintiff's Credible Mental Limitations

Next, Plaintiff argues that the ALJ's RFC finding does not include the limitations the ALJ found during her Psychiatric Review Technique Form ("PRTF") analysis and that her findings are therefore inconsistent (Doc 12-1, Plaintiff's Brief at 18). The Commissioner disagrees.

The PRTF is used to determine whether a claimant has a severe mental impairment and whether any severe mental impairment meets or equals a listed impairment. See 20 C.F.R. §§ 404.1520a(b), (d)(1)-(2), 416.920a(b), (d)(1)-(2). The findings obtained using the psychiatric review technique do not represent a claimant's mental RFC, which is a separate assessment. See 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

In this case, the ALJ limited Plaintiff to interaction with others in a "structured, non-intensive" work environment with only "infrequent change[s]" (Tr. 16, Finding No. 5). Therefore, assuming arguendo that the ALJ was required to account for her PRTF findings in the RFC finding, she did so in this case. By limiting Plaintiff to a structured, non-intensive work environment and infrequent changes, I conclude the ALJ accounted for Plaintiff's limitations with social interaction and concentration. She sought the opinion of a Vocational Expert ("VE"), who testified that although Plaintiff could not perform her past work, considering the RFC which the ALJ found and the restrictions he included, there were jobs in the economy which Plaintiff could perform (Tr. 49-50).

14

## The Signature By a Different Administrative Law Judge

Finally, Plaintiff argues the signature of the ALJ who presided over the hearing was not properly authenticated. In other words, another ALJ signed the decision for the judge who conducted the hearing.

The agency's Hearing, Appeals, and Litigation Law Manual ("HALLEX") provides staff and ALJs in the agency's Office of Disability Adjudication and Review with "guiding principles, procedural guidance[,] and information." Bowie v. Comm'r of Soc. Sec., 539 F.3d 395, 397 (6th Cir. 2008). HALLEX I-2-8-40 provides two separate procedures based on ALJ unavailability. See HALLEX I-2-8-40, 1993 WL 643064. When an ALJ who conducted a hearing is not available to issue a decision, the case is reassigned to another ALJ to review the record and write a decision. See id. When an ALJ who conducted a hearing has approved a final decision draft but is unavailable to sign the final decision, the Hearing Office Chief Administrative Law Judge ("HOCALJ") has authority to sign the final decision on behalf of the ALJ when the ALJ gives the HOCALJ written authorization. See id. In such circumstances, the decision is signed "HOCALJ John Doe for ALJ Jane Smith." See id.

Here, the decision is signed "Scott C. Shimer for Claire R. Strong" (Tr. 22). ALJ Strong was the ALJ who presided over the hearing (Tr. 28). This signature indicates that ALJ Shimer signed on behalf of ALJ Strong (Tr. 22). It does not mean that the case was reassigned to ALJ Shimer. See Lawrence v. Colvin, No. 3:13-032-DCR, 2014 WL 640990, at *4 (E.D. Ky. Feb. 18, 2014)(holding that where the HOCALJ signed "for" the presiding ALJ, there was no indication that the case was reassigned to the signing HOCALJ). Because ALJ Shimer signed on behalf of ALJ Strong and not in lieu of ALJ Strong, his signature indicates that ALJ Strong

15

reviewed and approved the final decision and was unavailable only to sign it. ALJ Shimer did not write or approve the decision.

The Commissioner concedes that the ALJ in this case deviated from the HALLEX procedure by not having the HOCALJ sign for the presiding ALJ. However, the Commissioner submits that this error is harmless and does not warrant remand. Several district courts in this Circuit have held that HALLEX is not binding on the courts and does not create procedural due process rights. See Lawrence, 2014 WL 640990, at *4 (holding that the HALLEX procedures are not binding on the court and do not create procedural due process rights); Hedden v. Comm'r of Soc. Sec., No. 1:10 CV 534, 2011 WL 7440949, at *10 (W.D. Mich. Sept. 6, 2011) ("[T]he Court is aware of no controlling authority holding that the HALLEX regulations carry the force of law such that failure to act in conformity therewith is a sufficient basis for relief."), *adopted*, 2012 WL 663186 (W.D. Mich. Feb. 29, 2012); Kendall v. Astrue , No. 09 239 GWU, 2010 WL 1994912, at *4 (E.D. Ky. May 19, 2010) ("HALLEX does not create a procedural due process issue as do the Commissioner's regulations in the Code of Federal Regulations.").

Further, this Court has held that a showing of prejudice by the claimant is required before the Court will remand for the deviation. See Beason v. Comm'r of Soc.Sec., No. 1:13-cv-192, 2014 WL 4063380, at *10 (E.D. Tenn. Aug. 15, 2014)(holding that where a plaintiff fails to make allegations of prejudice, he is not entitled to relief unless the prejudice is apparent from the record); Adams v. Comm'r of Soc. Sec., No. 4:13-cv-22, 2014 WL 3368692, at * 8-9 (E.D. Tenn. July 9, 2014); Estep v. Astrue, No. 2:11 0017, 2013 WL 212643, at *11-12 (M.D. Tenn. Jan. 18, 2013) (finding no prejudice in one ALJ signing on behalf of another). Plaintiff has failed to show any prejudice. ALJ Strong reviewed the record, authored the decision, and approved it (Tr.

16

22). She was unavailable for signing, so a different ALJ signed for her (Tr. 22). ALJ Strong reviewed and discussed all of the relevant medical evidence, and substantial evidence supports her decision. Plaintiff has not shown how the different signature has prejudiced her. Therefore, I do not recommend remand on this basis.

## Conclusion

I conclude the ALJ applied the correct legal standards in evaluating Plaintiff's case. The Sixth Circuit recognizes substantial evidence must be based on the record as a whole. See Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. See Richardson v. Perales, 402 U.S. 389, 402 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole. See Warner, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

The administrative record as a whole contains substantial evidence to support a conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I CONCLUDE there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither

17

reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND[1]:

    (1)  The plaintiff's motion for judgment on the administrative record (Doc. 12) be DENIED.

    (2)  The defendant's motion for summary judgment (Doc. 15) be GRANTED.

    (3)  The case be DISMISSED.

    S /*William B. Mitchell Carter*
    UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).